1839.

ASTREEN
*v.*
FLANAGAN.

---

### ASTREEN *v.* FLANAGAN and wife.

Where a person makes a purchase and advances the consideration, the property is *prima facie* his own, although the title is taken in a third person's name; but this presumption or implied trust may be repelled and the *onus* to that effect is on the grantee named in the deed, provided he is a stranger; but not so, where the grantee is a wife or child.

Where a child is so by adoption, and a conveyance of land purchased is taken in the name of the child, the principles growing out of the relation of parent and child may be considered as applicable.

Case where an alien adopted an infant about five years of age, and had a lot conveyed in her name. The conveyance remained in the infant's family; and, although he assumed acts of ownership, yet as there was evidence to show he called it the infant's property, the court, under all the circumstances, decreed it a gift and not a case of trust.

---

CAUSE heard on pleadings and proofs.

The bill was filed for a reconveyance of property conveyed to the defendant's wife, while she was an infant.

This bill showed that on or about the fourteenth day of September, one thousand eight hundred and nineteen, Grove B. Waldron, was the owner of a certain lot of land in the twelfth ward of the city of New-York; that the complainant, being then a subject of the King of Sweden and not entitled to hold real estate in his own name, and being then desirous of purchasing the said lot, he applied to his friend John Higham, then of the city of New-York, but since deceased, as his agent, to take the title of the said lot in his name, for the benefit of the complainant; when it was agreed upon, between the said John Higham and the complainant, that the

*Feb.* 19,
1839.

*Gift inter vivos.*

title should be taken in the name of Sarah Isabella Higham, the daughter of the said John Higham, then an infant, aged about five years, for the sole benefit of the complainant and in trust for him.    The said Sarah Isabella Higham, then residing with the complainant, he having taken her, in the year one thousand eight hundred and sixteen, when she was about two years of age, for the purpose of adopting her as his daughter, *with the consent of her father*; and that she continued so to reside until the autumn of the year one thousand eight hundred and thirty-two, when she left his house—the complainant having been at the whole expense of her maintenance, clothing and education.    That shortly thereafter, and while she was about nineteen years of age, she intermarried with John Flanagan.    That, in pursuance of the understanding between John Higham and the complainant, the latter, on the fourteenth day of September, one thousand eight hundred and nineteen, paid to the said Grove B. Waldron, (the owner of the lot), by his, the complainant's agent, the said John Higham, two hundred dollars for the lot; and the said Grove B. Waldron made and executed a deed of the same to the said " Sarah Isabella Higham, the daughter of John Higham," and which deed was recorded on the fifth of October, one thousand eight hundred and nineteen. That the said Sarah Isabella Higham was still an infant. That soon after the conveyance, the complainant enclosed the lot with a good fence; and, for the first year thereafter he cultivated it; and then let it, from year to year, to the said John Higham, at the yearly rent of seven dollars, and which sum he paid down to the time of his death, which happened in January, one thousand eight hundred and twenty-seven; and the fence was kept, at that time and thereafter, in repair by the complainant.    After Higham's death, the complainant let the lot to other persons and received the rent for the same.    That in the spring of the year one thousand eight hundred and thirty-two, he leased it to one William Colin, for three years, at the yearly rent of five dollars.    That he had paid the taxes until two years last past, during all which time he had been in quiet possession.

The complainant also set forth in his bill, that he was then a naturalized citizen.    That the said John Flanagan, and the said Sarah Isabella, his wife, in her right, then, for the first

time, claimed title to the said lot, and were attempting to mortgage or sell it in fraud of the complainant's rights. And that they were without property and, as the complainant believed, utterly irresponsible. *Prayer:* that the said John Flanagan and Sarah Isabella his wife might be decreed to execute a conveyance of the lot to the complainant, clear of incumbrances, or that the said Sarah Isabella might be decreed to hold the property in trust for him ; and, for further relief.

The defendants, John Flanagan and Sarah Isabella his wife, in their answer, admitted many of the facts in the bill; but denied that the lot was purchased for the complainant, alleging that it was purchased for the benefit of the said Sarah Isabella, and that the rent was applied to her clothing; also, that she had come of age. That the complainant, in all the matters of the said lot, acted as the friend, guardian or father of the said Sarah Isabella, in consequence of his having adopted her. That the said John Higham, up to the time of his decease, had the custody of the deed of the said premises, as had his wife, (the mother of the defendant, Sarah Isabella,) from the time of his decease until she died, while, ever since then it had remained in the possession of the said Sarah Isabella, or her sister for her, and was never in the possession of the complainant.

The testimony on the part of the complainant went to show that his money was employed to buy the lot; and that the father, John Higham, declared it was the complainant's money, and the lot was bought for him, but could not be taken in his name, owing to his alienage. Among the witnesses was Joseph Higham, a son of John Higham. He deposed that his father paid the complainant rent for the lot. That a few days before his father's death, Mrs. Astreen was there, and witness's father told her, he was afraid there would be some trouble as to the lot belonging to Mr. Astreen when he died. " Joseph," says he, " if you are living, and this is ever fetched up in contest, never see him wronged if you are living :" but, as it will be seen, the court did not place much reliance upon his deposition.

The witnesses, on the part of the defendants, were principally their relations or connections ; but they showed admissions and acts on the part of the complainant himself, tending

Vol. III.—36

.to prove that he considered the lot as purchased for and belonging to the defendant, Mrs. Flanagan.

Mr. *S. D. Craig*, for the complainant.

Mr. *G. Clark*, for the defendants.

*October 7.*

THE VICE-CHANCELLOR :—The purchase of the lot in ques tion *having been made by or under the direction of the com*plainant, and he having paid the purchase-money, he is entitled *prima facie* to the property, on the ground of a resulting trust, although the title was taken with his assent in the name of the defendant, Sarah Isabella. But this presumption may be repelled by circumstances as well as by direct proof, showing that a trust was not intended, but, on the contrary, a gift or advancement to the grantee : *Jackson ex dem. Feller* v. *Feller*, 2 Wend. 465.

The rule is, that a purchase in the name of another, who stands in no such relation, as child or wife, creates a trust in favor of the person advancing the money, and the burden of proof is upon the grantee to rebut the trust : *Rider* v. *Kidder*, 10 Ves. 360

But where such relation exists, a purchase, in the name of wife or child, will be considered an advancement until the contrary appears ; and the burden of proof is upon the party asserting the trust : *Finch* v. *Finch*, 15 Ves. 43 ; see also, *Jackson* v. *Matsdorf*, 11 J. R., 102 ; *Livingston* v. *Livingston*, 2 J. C. R., 537.

There is evidence in this case, showing that the defendant, Sarah Isabella, was taken into the family of the complainant, and became his child by adoption ; and I am not sure that, under the circumstances, the relation of parent and child must not be deemed to have existed, so as to carry, along with the fact of taking the deed in her name, the presumption of its being a gift or advancement, instead of a trust to result in the complainant's favor.

But suppose the presumption to be the other way, and in favor of a trust : I am still of opinion that the evidence sufficiently repels the alleged trust and shows that a gift to the child was intended. If a trust was intended, on account of his

being an alien, why was an infant of such tender age selected for a trustee? His inability to hold real estate in his own name could be removed in five years, and yet the title was to be vested in a child in trust, who could not reconvey it short of about fifteen years, even if she lived to attain her majority. Why was not her father selected as the trustee, who was the intimate and confidential friend of the complainant, and who was, indeed, the agent in making the purchase? Her unsuitableness to be a trustee, &c., furnishes a strong argument to the contrary. But, independent of this, there is positive proof of the complainant's repeated declarations, that it was Sarah's lot, that it had been purchased for her, and was intended for her benefit and advantage. There is also proof of an understanding in the families of the complainant and the defendant's father to that effect, although, with respect to the declarations of the defendant's father, even supposing they can be evidence for or against the defendants, I think the preponderance is decidedly in favor of his understanding it to be a gift to the defendant. Little or no credit is due to Joseph Higham on this subject; and the testimony of the other witnesses on the part of the complainant, showing that it was called Astreen's lot, &c., is not inconsistent with his purchase of it as a gift to the child and his having the control and management of the lot for her benefit, as he naturally would, during her minority and while she was living in his family.

Upon the whole, there is not enough shown to warrant the court in depriving her of the title and ownership of the property; and the bill must be dismissed, with costs.